**IN THE
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **N'EKWUNIFE MUONEKE, Ph.D.** | § | |
| | § | |
|     Plaintiff, | § | |
| | § | **Case No.:** |
| vs. | § | |
| | § | |
| **PRAIRIE VIEW A & M UNIVERSITY,** | § | |
| | § | **TRIAL BY JURY DEMANDED** |
|     Defendant. | § | |

**PLAINTIFF'S COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

N'EKWUNIFE MUONEKE, Plaintiff, complains of PRAIRIE VIEW A & M UNIVERSITY (hereinafter "PVAMU" or "Defendant") and for cause of action would show the Court as follows:

**INTRODUCTION**

1. Plaintiff demands a jury trial in this case as to any and all issues triable to a jury.

2. Plaintiff files this Complaint and complains about national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended; §1981 of the Civil Rights Act of 1866, as amended; and under Chapter 21 of the Texas Labor Code.

3. This action seeks compensatory and punitive damages, plus lost wages (past, present, and future), liquidated damages, plus attorney's fees, taxable court costs, pre-judgment and post-judgment interest.

1

## PARTIES

4. Plaintiff, N'EKWUNIFE MUONEKE is a resident of Houston, Texas.

5. Defendant, PRAIRIE VIEW A & M UNIVERSITY, is a government entity and may be served with process, by mail, or in person, by serving its registered agent, Jim Davis, Deputy AG for Civil Litigation, Price Daniel, Sr. Building, 8th floor, 209 W. 14th St., Austin, TX 78701.

## VENUE

6. Venue is appropriate in the United States District Court for the Southern District of Texas, Houston Division, in that the Defendant can be said to reside and/or do business in this district as required under 28 U.S.C. §§1391(a)(1) and (c). Alternatively, venue is appropriate because a substantial part of the events or omissions giving rise to the claim occurred here. See 28 U.S.C. §1391(a)(2).

## JURISDICTION

7. This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331 (federal question jurisdiction) and under Title VII of the Civil Rights Act of 1964, as amended.

8. The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUISITES

9. All conditions precedent to the filing of this action have been met by Plaintiff in that he has filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and has received a Notice of Right to Sue letter from said agency to pursue his claims, and he is filing suit within the statutory period.

10. Plaintiff filed a Charge of Discrimination against Defendant with the EEOC on March 17, 2015, which is within 300 days of the last discriminatory act (forced retirement on August 31, 2014).

11. On May 8, 2015, Plaintiff was issued a Notice of Right to Sue letter from the EEOC entitling him to file suit on his claim of discrimination based on national origin.

12. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

## FACTS

13. Defendant hired Plaintiff as a professor of Mathematics on August 23, 1986.

14. Plaintiff is from Nigeria, and is now a U.S. citizen.

15. Aliakbar Haghighi became the Department Head of Defendant's Mathematics Department in 2002, and he orchestrated the removal of several employees who were from African countries, including Plaintiff. Besides Plaintiff, the other African employees displaced during the administration of Dr. Haghighi were Dr. Jean-Paul Pemba, Dr. Wetiba Johnson, Dr. Nelson Butuk, Mr. Kapuku Miango, and Dr. Mathias.

16. Dr. Haghighi is Iranian.

17. The employees, such as Plaintiff, from African countries were replaced with less qualified or equally qualified counterparts from Iran. Many junior faculty members from African countries were also replaced by Dr. Haghighi with people from Middle Eastern nations who were not as qualified.

18. In 2008, Plaintiff volunteered as a witness for Dr. Butuk Nelson, another African, in his complaint of discrimination based on his national origin. After this, Plaintiff's salary was frozen in retaliation for his participation in the discrimination matter of Dr. Nelson.

19. In 2012, 2013, and 2014, Plaintiff was denied the government-mandated living expense raise of 3% per year, which was given to every professor whose salary was less than $65,000. Plaintiff's salary was only $54,800, yet he did not receive the raises due to his national origin and because of retaliation, as described above. When Plaintiff was forced to retire from PVAMU, he was the lowest paid professor in the Math Department despite having more experience than other employees.

20. Plaintiff was also denied training, while employees from non-African countries and/or Iranian/Middle Eastern employees were given training.

21. Plaintiff was given fewer classes than professors from non-African countries.

22. Plaintiff was not allowed to apply to be Director of the Honors program. In 2004, PVAMU refused to read his promotion portfolio. Plaintiff was also forced to use old equipment while employees from non-African countries received new computers.

23. Every semester from 2002 to 2014, Dr. Haghighi harassed Plaintiff by constantly following him around, writing him frivolous emails daily, and reporting him for imagined mistakes 2 or 3 times a week. For example, he would often harass Plaintiff in the hallways and tell him that he should be in class when he did not have class or was just trying to use the restroom. He would also gossip about Plaintiff to administrators and tell hm that President Wright and Dr. JT Smith discuss how to get rid of him. Dr. Haghighi did not do this to employees from non-African countries.

24. Between May and August 2014, Dr. Haghighi removed Plaintiff's research papers, books, and a box of money from Plaintiff's office under the pretense that he wanted to give the office to another professor. However, there was no other professor at the time. He did not do this to employees from non-African countries.

25. Plaintiff complained about Dr. Haghighi's discrimination to Dean Kelley every semester. The Dean would meet with Plaintiff and Dr. Haghighi, but ultimately would take Dr. Haghighi's side since he was the department head.

26. As a result of the discrimination and retaliation, Plaintiff was forced to retire on August 31, 2014. Defendant accused Plaintiff of not following requirements such as completing evaluations, which he only missed one of, and Joanna Thomas-Smith, the Academic Vice President, asked him to resign or be fired. Since Plaintiff was given no choice but to resign or be fired (due to retaliation and national origin discrimination), he chose to resign (retire).

27. All conditions precedent to the filing of this action have been met by Plaintiff.

## DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN

28. Plaintiff re-alleges and incorporates into count one paragraphs 13-27.

29. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII of the Civil Rights Act of 1964, as amended, and §1981 of the Civil Rights Act of 1866, as amended.

30. Defendant has maintained a policy of national origin discrimination in violation of the foregoing statutes against Plaintiff.

31. If Plaintiff were not from Nigeria, he would not have been forced to retire.

## DISCRIMINATION ON THE BASIS OF RETALIATION

32. Plaintiff re-alleges and incorporates into count one paragraphs 13-27.

33. Defendant, by and through its agents and employees, intentionally engaged in the aforementioned practices, policies, customs and usages made unlawful by Title VII of the

5

Civil Rights Act of 1964, as amended, and §1981 of the Civil Rights Act of 1866, as amended.

34. Defendant has maintained a policy of retaliation in violation of the foregoing statutes against Plaintiff.

35. If Plaintiff had not been a witness in Dr. Nelson's discrimination claim, he would not have been forced to retire and would not have been the victim of retaliation.

## DAMAGES

36. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of wages, both in the past, present, and future, as well as compensatory damages, including but not limited to emotional distress.

## EXEMPLARY DAMAGES

37. Defendant's actions were intentional, willful, harsh, oppressive, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress. The wrongs done by the Defendant were aggravated by the kind of willfulness, wantonness and malice for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

## ATTORNEY'S FEES

38. Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff's retaining the services of COANE and ASSOCIATES, PLLC, in order to initiate this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## JURY DEMAND

39. Plaintiff hereby makes his demand for a jury trial.

## PRAYER

40. WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause, Plaintiff has the following relief:

    a. Back Pay;

    b. Pre-Judgment Interest on Back Pay;

    c. Front Pay;

    d. Compensatory Damages, including but not limited to emotional distress;

    e. Punitive Damages;

    f. Injunctive and Affirmative Relief;

    g. Attorney's Fees and Costs;

    h. Such other and further relief, at law or in equity, general or special to which Plaintiff may show he is justly entitled.

Respectfully submitted,

*/s/ Shelby C. Vick*
Shelby C. Vick
TX Bar #24073498
Email: shelby@coane.com
Bruce A. Coane
TX Bar #04423600
Email: bruce.coane@gmail.com
Coane and Associates, PLLC
5177 Richmond Ave., Suite 770
Houston, TX 77056
Telephone: 713-850-0066
Facsimile: 713-850-8528
**ATTORNEYS FOR PLAINTIFF**