United States District Court
Southern District of Texas

**ENTERED**

May 26, 2016

David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| N'EKWUNIFE MUONEKE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-15-2212 |
| | § | |
| PRAIRIE VIEW A&M UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

**I.      Background**

The plaintiff, N'ekwunife Muoneke, sued his former employer, Prairie View A&M University, for national-origin discrimination and retaliation under Title VII, 42 U.S.C. § 2000e *et seq.*  Muoneke is a United States citizen originally from Nigeria.  (Docket Entry No. 14 at ¶ 14).  Prairie View hired him to teach in the math department on August 23, 1986.  (*Id.* at ¶ 13).

Muoneke alleged that Aliakbar Haghighi, who is from Iran and who became the department chair in 2002, "orchestrated the removal of several employees who were from African countries" and tried to replace the math professors from African countries "with less qualified or equally qualified counterparts from Iran" or from other Middle Eastern nations.  (*Id.* at ¶¶ 15–17).

Muoneke alleged that to get him to leave the department, Haghighi "harassed" him from 2002 until he left in 2014.  He alleged harassment that included "following him around, writing him frivolous emails daily, and reporting him for imagined mistakes 2 or 3 times a week."  (*Id.* at ¶ 23).  Haghighi would "harass [Muoneke] in the hallways and tell him that should be in class when he did not have class or was just trying to use the restroom."  (*Id.*).  Haghighi also allegedly gossiped about

Muoneke to Prairie View administrators; conspired with them to have Muoneke fired; and removed research papers, books, and money from his office "under the pretense that [Haghighi] wanted to give the office to another professor," although no other professor lacked an office.  (*Id.* at ¶ 24).

Muoneke also alleged that because of Haghighi, Prairie View denied Muoneke the opportunity to direct the honors program, forced him to use outdated equipment, denied him training, assigned him few classes to teach, and denied him annual salary increases.  (*Id.* at ¶¶ 19–22).  Non-African employees did not receive this type of treatment.  Muoneke complained to the University dean "every semester" about Haghighi's "harassment," but the University took no action. (*Id.* at ¶ 25).  Prairie View also allegedly retaliated against Muoneke for complaining about the harassment and for testifying in a colleague's 2008 national-origin employment-discrimination lawsuit.  The retaliation allegedly included freezing his salary.  (*Id.* at ¶¶ 18–19).

Muoneke left Prairie View on August 31, 2014.  He alleges that he was "forced" to retire. (*Id.* at ¶ 26).  Muoneke filed a discrimination charge with the Equal Employment Opportunity Commission on March 17, 2015.  (Docket Entry No. 22, Ex. 1 at p. 33).  The charge stated that Prairie View had discriminated against him based on his national origin; it did not allege or mention retaliation. (*Id.*).

Muoneke filed his complaint in this suit on June 31, 2015 and amended the complaint on December 2, 2015.  (Docket Entry Nos. 1, 14).  Prairie View has moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) based on limitations and on the failure to exhaust administrative remedies.  Muoneke has responded, and Prairie View replied.  (Docket Entry Nos. 20, 22, 23).

Based on the motions, the briefs and submissions, the pleadings, and the applicable law, the

court grants in part and denies in part Prairie View's motion to dismiss.  A status conference is set for **June 1, 2016 at 3:00 p.m.** in Courtroom 11-B to discuss the schedule for discovery, subsequent motions, and trial.

The reasons are explained below.

II.     **The Motion to Dismiss Based on Limitations**

A.     **The Applicable Legal Standard Under Title VII**

A plaintiff suing under Title VII must file a charge of discrimination with the EEOC.  42 U.S.C. § 2000e-5(f)(1).  The statute sets the filing deadline:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . ., except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1).

"[T]he requirement that persons aggrieved must initially institute proceedings with the state referral agency is met by the EEOC's routine transmittal of a copy of the complaint to the state referral agency." *Urrutia v. Valero Energy Corp.*, 841 F.2d 123, 125 (5th Cir. 1988).  "Neither party contests that the EEOC routinely transmitted a copy of [Muoneke's] complaint to the Texas Commission on Human Rights, the Texas referral agency, so the default limitations period is three hundred days." *See Messer v. Meno*, 130 F.3d 130, 134 n.2 (5th Cir. 1997).  "[A] discrimination claim not brought within 300 days of the alleged discriminatory act is time-barred." *Mack v. John*

*L. Wortham & Son, L.P.*, 541 F. App'x 348, 355 (5th Cir. 2013) (per curiam); *see also Huckabay v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998) ("In a state that, like Texas, provides a state or local administrative mechanism to address complaints of employment discrimination, a title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged.").

Interpreting § 2000e-5(e)(1) raises two "critical questions": "What constitutes an 'unlawful employment practice' and when has that practice 'occurred'?" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* As for "practice," the Supreme Court has "repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *Id.* at 111. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114. "[T]he limitations period begins on the date of the alleged unlawful employment action." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011). "The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (alteration omitted) (quotation marks omitted). In *Ricks*, for example, the Court asked "when the [adverse action] was made" and "when [the plaintiff] was notified." *Id.* at 259.

"'[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 521 (5th Cir.

2008) (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).

The circuits have split over whether the plaintiff must show compliance with Title VII's timing requirements as a condition to filing suit, or whether the defendant must show the plaintiff's failure to comply as an affirmative defense. *Compare, e.g.*, *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007) (plaintiff has the burden), *with, e.g.*, *Colbert v. Potter*, 471 F.3d 158, 165 (D.C. Cir. 2006) (defendant has the burden).[1]   Muoneke pleaded that he timely filed his discrimination charge with the EEOC, and Prairie View asserted in its answer the failure to timely file as an affirmative defense.

**B.      Rule 12(b)(6)**

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute-of-limitations defense. *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987).  "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 758 (5th Cir. 2015) (quotation marks omitted).  A court should dismiss based on limitations only if that bar to relief appears on the face of the complaint or other appropriately considered materials. *Garrett v. Commonwealth Mortg. Corp. of Am.*, 938 F.2d 591, 594 (5th Cir.

---

[1] *See generally* Viviana Aldous, Comment, *Timed Out of Title VII Claims: Which Party Should Bear the Burden of Showing Compliance with Title VII Timing Requirements?*, 2014 U. CHI. LEGAL F. 697 (2014).

1991).  Appropriate materials may include attachments to the complaint.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).

In evaluating a Rule 12(b)(6) motion to dismiss, a court limits itself to the contents of the pleadings, with an exception.  In *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of documents the defendant attached to a motion to dismiss that were "referred to in the plaintiff's complaint and are central to the plaintiff's claim."  *Scanlan v. Tex. A & M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Collins*, 224 F.3d at 498–99).  Other courts approve the same practice.  *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." (citations omitted)); *Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1988) (citation omitted).

When a plaintiff's complaint fails to state a claim, the court should generally allow the plaintiff to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that doing so would be futile.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that the "proposed amendment clearly is frivolous, advancing a claim or defense that is legally insufficient on its face."  6 WRIGHT & MILLER § 1487; *see also Ayers v.*

*Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))).

**C.     The Documents Appropriately Considered**

Prairie View attached the following documents to its motion to dismiss:

- Muoneke's January 10, 2014 notice of recommendation of dismissal for cause;

- Muoneke's January 15, 2014 response to the notice;

- the April 29, 2014 findings and recommendations of the faculty committee charged with reviewing the recommendation, which were addressed to the Prairie View University President for further review;

- Muoneke's October 20, 2010 faculty-improvement plan;

- a February 2013 email exchange between Muoneke and Haghighi;

- a November 4, 2011 memorandum from Haghighi to the provost regarding student concerns about Muoneke; and

- Muoneke's EEOC charge.

(Docket Entry No. 20, Exs. 1–4).

Muoneke attached the following documents to his response:

- his resume;

- the notice of recommendation of dismissal for cause;

- his response to the notice;

- the findings and recommendations of the faculty committee;

- pay stubs from December 2013 to May 2014;

7

- Prairie View's "Academic Freedom, Responsibility and Tenure" policies;

- an affidavit he submitted; and

- his EEOC charge.

(Docket Entry No. 22, Ex. 1).

Only one of these documents is referred to in the amended complaint and is central to Muoneke's claims: the EEOC charge.  (Docket Entry No. 14 at ¶ 10).  The other documents cannot be considered on a motion to dismiss.  The court must first exercise its "discretion to either accept or exclude the evidence" by converting the motion to dismiss into one for summary judgment.  *Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775 (5th Cir. 2007) (quotation marks omitted).  The court will not consider the documents and convert Prairie View's motion to dismiss into a motion for summary judgment.  Although Muoneke had an attorney until recently, he is now unrepresented and proceeding *pro se*.  The parties have not engaged in meaningful discovery, and it is unclear what discovery is appropriate.  In light of these facts, the court limits its review to the complaint allegations and the EEOC charge.

### D.    Analysis

The Supreme Court has stressed that before analyzing limitations under Title VII, courts must first "identify precisely the unlawful employment practice of which [the plaintiff] complains."  *Ricks*, 449 U.S. at 257 (quotation marks omitted).  Muoneke resigned from his job.  "A resignation is actionable under Title VII . . . only if the resignation qualifies as a constructive discharge."  *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001).  "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign."  *Id.* (quotation marks omitted).  Courts in the Fifth Circuit consider

8

the following seven factors:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (alteration omitted); *see also* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS § 11.6 (2014).

Muoneke's complaint alleged intentionally discriminatory treatment directed to him and others within his protected class, starting in 2002 until he left in August 2014.  (Docket Entry No. 14 at ¶¶ 13–26).  The alleged acts included reducing his job responsibilities and harassing and humiliating him in ways calculated to encourage his resignation.  These allegations are consistent with a constructive-discharge discrimination theory.

The question is when the date of the alleged unlawful employment practice begins for a constructive-discharge claim.  The Supreme Court recently interpreted the filing period for a constructive-discharge claim under Title VII for federal employees.  *Green v. Brennan*, — S. Ct. —, 2016 WL 2945236 (May 23, 2016).  A federal-employee Title VII plaintiff must "initiate contact" with the EEOC counselor at his agency "within 45 days of the date of the matter alleged to be discriminatory."  29 C.F.R. § 1614.105(a)(1).  The text of the regulation in *Green* is different from the text of the statute at issue here.  The regulation focuses on "the matter alleged to be discriminatory."  The statute, by contrast, focuses on "the alleged unlawful employment practice."

*Green* is nonetheless instructive.  The Court noted that "[a]lthough the language is different, the EEOC treats the federal and private-sector employee limitations periods as identical in operation."  *Green*, — S. Ct. at —, 2016 WL 2945236, at *4 n.4.  Finding the regulation's text "not particularly helpful," the Court relied instead on the general interpretive rule that a limitations period

begins when the plaintiff has a "complete and present" cause of action. *Id.* at *4–5.  The Court stated that "[n]othing *in the text of Title VII* or the regulation . . . suggests that the standard [limitations] rule should be displaced . . . ." *Id.* at *6 (emphasis added).  And the Court noted that "[s]tarting the limitations clock ticking before a plaintiff can actually sue for constructive discharge serves little purpose in furthering the goals of a limitations period—and it actively negates Title VII's remedial structure." *Id.* at *7.  As Justice Alito observed in his concurrence, the Court's analysis strongly suggests that "the same rules should apply in the federal and private sectors," particularly given that the Court relied "on private-sector cases in describing the Circuit split that [the] decision [was] meant to 'resolve.'" *Id.* at *12 (Alito, J., concurring).  The court applies *Green* in determining when limitations started to run on Muoneke's constructive-discharge claim.

*Green* held that "a cause of action does not become complete and present for limitations purposes until the plaintiff can file suit and obtain relief." *Id.* at *5 (alteration omitted) (quotation marks omitted).  "[A]n employee cannot bring a constructive-discharge claim until he is constructively *discharged*," so "the limitations period should begin to run for a constructive-discharge claim only after a plaintiff resigns" because it is "[a]t that point—and not before—[that] he can file a suit for constructive discharge." *Id.* at *5–6.  "[T]hat a resignation triggers the limitations period for a constructive-discharge claim raises the question of when precisely an employee resigns." *Id.* at *11.  "[A] constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation." *Id.*

Muoneke alleges that the unlawful employment action occurred on August 31, 2014, when he resigned because his job conditions became intolerable. (Docket Entry No. 14 at ¶ 26).  Muoneke

does not differentiate between giving notice of his intent to resign and the effective date of his resignation.  They appear to have occurred on the same day.  (*See id.*).  Because limitations started to run on August 31, 2014, Muoneke's March 17, 2015 EEOC charge was filed within 300 days of the adverse employment action that is the basis for this Title VII action.

Prairie View's motion to dismiss his constructive-discharge claim based on limitations is denied.  To the extent it depends on evidence outside the pleadings, those arguments may be reurged at the proper stage.

## III.     The Motion to Dismiss Based on Administrative Exhaustion

### A.      The Applicable Legal Standard Under Title VII

In addition to timely filing a discrimination charge with the EEOC, "[e]mployment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court."  *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002).  "Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation."  *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 272 (5th Cir. 2008).  The Fifth Circuit "construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that can reasonably be expected to grow out of the charge of discrimination."  *Id.* at 273 (quotation marks omitted).  This fact-intensive analysis "looks beyond the four corners of the document to its substance."  *Id.*  "Failure to exhaust is not a procedural 'gotcha' issue."  *Id.* at 272; *see also Pacheco v. Mineta*, 448 F.3d 783, 788–89 (5th Cir. 2006).

Unlike limitations under Title VII, the administrative-exhaustion requirement is jurisdictional.  "[C]ourts have no jurisdiction to consider Title VII claims as to which the aggrieved

11

party has not exhausted administrative remedies." *Simmons-Myers v. Caesars Entm't Corp.*, 515 F. App'x 269, 272 (5th Cir. 2013) (per curiam) (citing *Nat'l Ass'n of Gov't Emps. v. City of Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 711 (5th Cir. 1994)).[2]

**B.      Rule 12(b)(1)**

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a court's subject-matter jurisdiction.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Masidon*, 143 F.3d 1006, 1010 (5th Cir. 1998).  "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant Cty.*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1) that does not implicate the merits of plaintiff's cause of action, the district court has substantial authority "to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quotation marks omitted); *see also Clark*, 798 F.2d at 741.  When a party challenges the allegations supporting subject-matter

---

[2]  What appears to be the most recent Fifth Circuit case addressing this issue makes clear that the failure to administratively exhaust is viewed as a jurisdictional bar to suit.  *Simmons-Myers*, 515 F. App'x at 272.  Some other circuits disagree.  *Compare, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385–86 (2d Cir. 2015) (mandatory but nonjurisdictional); *Adamov v. U.S. Bank Nat'l Ass'n*, 726 F.3d 851, 855–56 (6th Cir. 2013) (same); *Vera v. McHugh*, 622 F.3d 17, 29–30 (1st Cir. 2010) (same); *Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009) (same), *with, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300–01 (4th Cir. 2009) (jurisdictional).  The disagreement centers on whether the Supreme Court's decision in *Zipes*, 455 U.S. at 393, which made clear that Title VII's limitations period for filing an EEOC charge was mandatory but nonjurisdictional, also applies to the administrative-exhaustion requirement.  *Compare Fowlkes*, 790 F.3d at 84–85 (yes), *with Jones*, 551 F.3d at 300 n.2 (no).

jurisdiction, the court has wide discretion to allow affidavits, other documents, and to hold a limited

evidentiary hearing to resolve disputed jurisdictional facts.  The court may consider matters outside

the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter

jurisdiction, without converting the motion to dismiss to one for summary judgment.  *See Garcia*,

104 F.3d at 1261. The plaintiff has the burden of demonstrating that subject-matter jurisdiction

exists.  *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

    **C.    Analysis**

    The relevant question is whether the national-origin and retaliation claims asserted in

Muoneke's amended complaint reasonably could be expected to grow out of his EEOC

discrimination charge.  *McClain*, 519 F.3d at 273.  His EEOC charge reads as follows:

> On or about August 23, 1986, I was hired by Prairie View A&M University where
> I was most recently employed as an Associate Professor.  After Aliakbar Haghighi
> became the Department Head he orchestrated the separation of several native African
> employees who he would replace with people who were similar to him ethnically and
> religiously.  Around August 2014, I grew tired of Dr. Haghighi's mistreatment which
> included freezing my salary since 2008, trying to deny me training and conference
> meetings, not being allowed to apply for the Director of the Honors program,
> refusing to read my promotion portfolio, and given old used equipment.  As a result
> of his treatment I decided to retire.  Before my last day of retirement, Dr. Haghighi
> had my research papers, published books and a box of money removed from my
> office.
>
> Dr. Haghighi made a clear difference in the way he treated African employees from
> others.  He told me he moved my things from my office because he wanted to give
> the office to another professor, however, there was no other professor at the time he
> removed my things.
>
> I believe I have been discriminated against based on my national origin, Nigerian,
> in violation of Title VII of the Civil Rights Act of 1946 [sic], as amended.

(Docket Entry No. 22, Ex. 1 at p. 31).  Muoneke's EEOC charge clearly alleges national-origin

discrimination.  The charge does not mention retaliation for Muoneke's complaints of discrimination

or for his testifying in support of a colleague who alleged discrimination.

Muoneke argues that "[a] retaliation investigation could have been expected to grow" out of his claim that Haghighi removed his belongings from his office.  The investigation, Muoneke argues, would "determine the motivation behind a university department head, unfittingly, taking it upon himself to physically move a professor's belongings out of his office."  (Docket Entry No. 22 at p. 12).

Title VII requires a plaintiff pleading retaliation to include factual allegations that: "(1) she was engaged in protected activity; (2) she was subjected to an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Porter v. Houma Terrebonne Housing Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015). Muoneke's EEOC charge does not allege facts supporting a reasonable inference that he engaged in protected activity or that Prairie View took adverse employment actions against him because of that protected activity.  The EEOC charge does not refer to or mention the retaliation allegations Muoneke later included in his complaint.  The charge does not mention his complaints about his treatment or his testimony in his colleague's 2008 employment-discrimination suit.

Muoneke did not have to "check a certain box or recite a specific incantation to exhaust his . . . administrative remedies," *Pacheco*, 448 F.3d at 792 (footnote omitted), or "allege a prima face case before the EEOC," *id.* at 791–92.  But his charge had to provide some reasonable basis to trigger an EEOC investigation into the claims he later advanced in the complaint.  A charge alleging race and age discrimination does not exhaust a sex-discrimination claim later asserted in a lawsuit. *Young v. City of Houston*, 906 F.2d 177 (5th Cir. 1990).  Similarly, a disparate-impact claim is not exhausted by a charge that alleged intentionally discriminatory disparate treatment but did not

14

identify a neutral employment policy that adversely affected members of the protected class. *Pacheco*, 448 F.3d at 792.

Muoneke's charge alleged only national-origin discrimination.  It identified no protected activity or causal link between an adverse employment action and that protected activity.  And it complained only of past incidents of national-origin discrimination intentionally directed against Muoneke and other African math faculty.  His EEOC charge did not administratively exhaust his retaliation claim.  *See id.*

The retaliation claim is dismissed without prejudice for lack of subject-matter jurisdiction but without leave to amend unless and until it is exhausted.

## IV.     Conclusion

The court grants in part and denies in part Prairie View's motion to dismiss.  (Docket Entry No. 20).  Muoneke's retaliation claim is dismissed for lack of subject-matter jurisdiction.  His national-origin discrimination claim is not dismissed at this time.  A status conference is set for **June 1, 2016 at 3:00 p.m.** in Courtroom 11-B to discuss the schedule for discovery, subsequent motions, and trial.

SIGNED on May 26, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge